Okay, thank you, Your Honor. I'd like to reserve one minute of time for rebuttal, if I can. My name is Craig Dorsey. I represent the Samish Indian Nation. Because the primary issue in this appeal is the Samish Tribes 2010 En Blanc decision in Washington IV, we decided that the Samish Tribes should go first. In Washington IV, the En Blanc Ninth Circuit held that newly recognized tribes, like the Samish Tribe, have the right to litigate unadjudicated treaty claims, such as hunting and gathering rights, by presenting their treaty evidence anew, regardless of whether they have already litigated other treaty claims, such as off-reservation treaty fishing. To put it directly, the En Blanc Court held that newly recognized tribes, like Samish, are not subject to issue preclusion from Washington II when bringing unadjudicated treaty claims. Samish freely acknowledges that it cannot relitigate its off-reservation treaty fishing right. Washington IV ended that claim. Rather, Washington IV means that in an appropriate forum, Samish can litigate unadjudicated treaty claims, such as off-reservation hunting and gathering. We believe Washington IV decided this expressly. The District Court's decision did not even address this ruling by the Washington IV Court. In this appeal, the state... Maybe you can just help me for a minute. What was the fundamental issue decided in Washington II? It was treaty status at that time. And so, again, there's two issues here. The issue is treaty status. The claim was treaty fishing rights. And how do you justify separating fishing rights from hunting rights under the treaty? Well, there's two reasons. One is that the Washington IV decision, we believe, expressly allows that treaty status issue to be relitigated. But the treaty fishing right under the treaty is different than the hunting and gathering claim. The treaty fishing right is in common with the citizens of the territory. It's a right. The hunting and gathering right states in the treaty that it's the privilege of hunting and gathering on open and unclaimed lands. Both of those claims are grounded. At core, they're grounded in the treaty. That's correct. The issue is the same. And in the absence of Washington IV, which looked at the totality of the evidence, they held that while Washington II should not be reopened, and their primary reason was all of the different court decisions, over 75 decisions, and the long-standing management decisions that had been, or management agreements that had been entered into as a result of the original decision, it would be too disruptive to allow Samish in its Rule 60b-6 motion to reopen that judgment. Those same- It doesn't really make sense that, you know, why sitting in bank, you know, that the court would have recognized these exception to issue conclusion you're talking about on newly recognized tribes when a key premise of that case, of course, was the distinct and independent nature of recognition versus treaty rights inquiries. So, you know, and it may be, you know, it's, of course, all in the eye of the beholder how you read the words in the decision, but I would appreciate your analysis of that. Well, there's a couple of reasons. One, as the court recognized, and I think this came out in the Washington III decision, and it's really reaffirmed by Judge Camby in the Washington IV case, is in its recognition proceeding, a great deal more evidence, better quality evidence was submitted. And in that proceeding, the Samish tribe met the same standard that is necessary for the exercise of treaty rights. It proved in the recognition proceeding that it had continuously existed from before treaty time to the present, that its government had been maintained in organized fashion, so it had met all the same criteria that it needed to establish to meet treaty status in Washington II. Now, the court also in Washington IV and in Washington III went through some of the historical background, sort of the chaotic situation that existed in the early days of Washington II. We freely admit that the Samish tribe did not present as much evidence as it did in its recognition proceeding. I think if you look back at the original rulings in Washington, in U.S. v. Washington I, you'll find in the early establishments of treaty status, say for Swinomish and Tulalip and Lummi, there's no factual findings there either that the tribe had continuously existed from treaty times to the present. The factual findings are just that they were currently organized as a tribal government, they had a current tribal membership role, and they had an Indian Claims Commissioning long time ago. Yes. And written on a different perspective, so it seems odd to me that you can rely on the fact that there was not specific findings on these things to say that that implies something in terms of the court's decision, and that doesn't seem to hold water to me. Yeah, and I'm not saying there's an implication there. I think that's the criteria that the Washington IV Court used, but it specifically adopted this test that a newly recognized tribe, even one that has previously adjudicated treaty rights and lost in that case, can litigate unadjudicated treaty rights anew by presenting its treaty evidence in an appropriate forum. So they established an exception, express exception, to issue preclusion, which is not mandatory for that narrow category of cases. Another way to read that is, you know, how much credence and interpretation you give to the word anew, and why isn't it better to basically say what the court was saying is that if you have a newly recognized tribe, then the evidence anew really relates to treaty tribe status, not just the recognition issues. Well, that's what you have to prove in the new proceeding is treaty status. You can't even use the presumption of recognition in that case, but you have to go back to the evidence. For example, in the state in their brief said, well, that doesn't really mean you present your treaty status evidence again, you present your recognition status evidence again. But one, green one and two said, recognition does not involve treaty status. And since 1994, when the federal recognition regulations were changed, you only have to prove that you existed from 1900 to the present. So you're not, you know, if it applied only to a new recognized tribe that's never litigated treaty status, they will not have presented any evidence that they existed from 1855. They only present evidence that they existed from 1900. So it doesn't make any sense unless you are presenting your treaty status evidence anew. Does the Samish Nation also take the position that this case shouldn't be decided on the issue preclusion and Sinochem and that it should go back for determination on standing jurisdiction and other issues? Yes, that's correct, Your Honor. Those weren't decided by the district court. While we cited some of the previous holdings of the Ninth Circuit on that issue, there has been no factual evidence or hearing on that issue and that that needs to be decided by the district court. We just think the district court completely ignored the issue preclusion exception. It laid out in great detail that needs to be reversed and the case needs to be remanded to the district court. I really have a fundamental question both for you and for the Snoqualmie tribe. If I follow the train of what you just said and it went back to the district court and let's just say for purposes of a positive ruling on for your client that let's assume they're standing and then that was sufficient and then let's assume that there's some jurisdiction whether it may not be against the state within given sovereign immunity but possibly against individuals who have been sued. So if everything went your way you'd be right back where you started here wouldn't you? Well the question whether the case can be heard in a posture that Snoqualmie has presented it is an open question for the district court. There's a Skokomish case that says you at least have to name all the other tribes to your particular treaty to avoid Rule 19. But Rule 19 is not jurisdictional so I'm just trying to understand the practical import of the argument made here by the tribes because it seems to me if everything were to go your way and it may not if each of those issues was decided wouldn't you be right back here? We probably will in a new case once those issues have been decided by the district court. You know we believe that what the test laid out by Washington 4 was that the case has to be raised in an appropriate posture primarily by intervening in a case brought by existing treaty tribes but that's for the district court to decide. The court is correct on the issue preclusion question. What's the point? Well no the issue preclusion question we believe the district court was wrong. Oh I know I understand that but if the but but the technical argument that you're also making is you shouldn't be here in the first place but the do you agree that the district judge had the ability to look at the issues and decide and and pick out the one that he thought was the positive one and go ahead and decide that. I know you think he decided it wrong. Yeah well I believe that the jurisdictional issue has to be decided first and that's the sovereign immunity question which the ninth circuit has ruled as quasi-jurisdictional and has to be decided before you get to the other questions. And presumably because jurisdiction is always before the court that could be determined by this court. I mean it's a legal issue. That's correct. Thank you. Mr. Smith. Thank you your honor. Good morning. May it please the court Robert Smith with Kilpatrick Townsend on behalf of the appellant Snoqualmie Indian tribe. I would like to acknowledge the elected members of the Snoqualmie tribal council who are watching today and I'll try to reserve one minute for rebuttal. Your honors I don't want to repeat Mr. Dorsey's argument but I have the sense that you may have more questions related to to Washington 4. Let me begin by addressing the issues and the questions asked this morning in a slightly different way. The en banc court in 2010 tells us that treaty status cannot and should not be viewed in isolation from the treaty right that is being adjudicated. The district court in its opinion and it's this is at er7 said that the issue that was being litigated previously in 1979 was quote broader than the fishing right claim adjudicated. That was the court's fundamental error below was that it read Washington 2 to the exclusion of Washington 4 and what the court in Washington 4 did was cabin Washington 2 and say that the issues that were addressed in that case were limited only to treaty fishing rights creating an exception for newly recognized tribes like Samish like Snoqualmie to litigate other treaty claims that had not yet been adjudicated. This case brings those other claims hunting and gathering claims which this court and the district court acknowledge have never been adjudicated before. So the district court's error was twofold. One sort of jumping to issue preclusion without first establishing whether it had subject matter jurisdiction over the state defendants but then secondly wrongly deciding the issue of the issue of issue preclusion by failing to consider Washington 4 and its impact on the Washington 2 decision. Let me ask you the same question that I asked your colleague Mr. Dorsey is what's the net effect of the position you're taking if if you are correct and they're standing in jurisdiction aren't you right back into parsing Washington 4 and the issue preclusion? I don't believe we are your honor because because this court can and should clarify that the en banc court meant what it said and that it created this exception for treaty rights that have not been adjudicated before. No that doesn't answer my question. I'm not asking you about the merits of the issue preclusion. I'm asking you about the practical import because what I think you want and and you should clarify for us you would like to go back to the district court and have the district court rule on standing and jurisdiction correct? That is correct. Okay if you lose on those issues you're out correct? That is also correct. If you were to win at least on some of the of the jurisdictional claims then you would be right back into the issue of issue preclusion would you not? No your honor because the issue that that we would be litigating right the question of whether Snoqualmie maintained an organized tribal structure sufficient to exercise treaty hunting and gathering rights hasn't been litigated before. So so because that specific issue has never been raised or contested or submitted for determination there is no issue preclusion. But the predicate issue that you say has never did you raise it in the district court? Well it's it's pled in the complaint I mean this was the the issue was I mean the the the state filed this motion for judgment on the pleadings so we were never able to get to that fundamental question that you're asking judge. It wasn't the predicate issue that you have to try it would like to try again the one that was tried before judge Bolt tried before special master for five days and judge Bolt for one which is the the continuous separate distinct and cohesive Indian cultural or political community question. Judge Oreck if it but for the en banc decision in in 2010 I would agree that that issue was litigated before was was decided on the merits and there would be issue preclusion. But the en banc court in 2010 cabins that decision just to treaty fishing rights right that's what the court was saying by allowing newly recognized tribes to present claims of treaty rights not yet adjudicated. The the en banc court certainly could in that 2010 decision have said that Samish and claims right could be foreclosed from litigating any treaty right but it created a distinction for hunting and gathering claims for other treaty claims not adjudicated. How do you get that out of Washington for? Well I don't think there's any other way to to read the exception for newly recognized tribes to bring claims of treaty rights not yet adjudicated by presenting evidence a new right what the what the state tries to do and what the district court bought into was this idea that you replace newly recognized tribe or newly recognized you you replace claims of treaty rights not adjudicated with tribes to say that tribes who had litigated any treaty status before cannot bring those claims again. But that's not what the en banc court said. The en banc court was intimately familiar as are the three of your honors with what the issues were that were being adjudicated within Washington 2 and Washington 3 and the in the entire body of law that is US v Washington. And it said that those claims relate only to fishing rights only to treaty status for fishing rights. And that is a critical distinction that the court was drawing by creating this this exception. The district court said it was a distinction without difference but it's the distinction it's a critical distinction and it allows Snoqualmie to be able to present this case subject to overcoming those other jurisdictional defenses that you mentioned Judge McKeely. What's the meaning in the rest of the paragraph you we pulled up a couple of sentences uh what's the of that paragraph what's the meaning of the the rest of the paragraph that discusses green two what do you what do you think that's heading to? Judge Rourke I believe the rest of the paragraph discussion discussing green two is making clear that when newly recognized tribes like Snoqualmie or Samish bring these claims they can't simply rely on the fact of that of their new recognition to be able to evidence of of that it had maintained a organized tribal structure sufficient to exercise treaty hunting and gathering rights. So while the fact of recognition is significant because it triggers that one aspect of the exception the tribes can't simply rely on that they need to be able to present their evidence as to treaty status anew right present a full sort of factual argument as to how the tribe has maintained that tribal structure so that it can be able to claim treaty rights for hunting and gathering. You said like kind of a personal inquiry are there tribes out there that were not that never made a claim either through intervention or part of Washington one who later gained federal recognition who were still out there who could make a fishing rights claim? Judge Paius no I mean the only the only two tribes that have obtained federal recognition that lie outside of U.S. v. Washington that don't have adjudicated fishing rights are the two tribes that are before you this morning. Does well I've I've one minute left if I may your honors I'd like to reserve that thank you unless there's other questions now no thank you. Good morning may it please the court can you see me yes we can okay good I have Amy Donor representing the state of Washington Governor Jay Inslee and WDFW Director Kelly Sussman. The state recognizes that this is an important issue for the Snoqualmie tribe which worked for years to obtain federal recognition but the district court correctly dismissed the complaint and it should be affirmed for three reasons first the Snoqualmie treaty status was adjudicated in asserted exceptions to issue preclusion do not apply and third the same interests and finality articulated by the unanimous elm bunk court in Washington for also apply here. Your honors listening to my colleagues this morning I understand that all acknowledge that in Washington to the treaty status of the tribes were litigated and I won't further address that point unless the court has questions instead I'll turn to Washington for the language there. In Washington for I want to focus on three parts of the passage that is the focus of the arguments here today first regarding the word anew that word is used in a sentence that has a including the second half of the sentence it's clear that that sentence is referring it's offering a contrast to recognition proceedings not to past adjudications so the purpose of the sentence is to reinforce the central holding of Washington for the factual determinations in federal recognition proceedings have no preclusive effect in treaty status and that's because other tribes do not have a right to intervene in the tribal recognition litigation and the outcome of those proceedings cannot have a preclusive effect for those tribes therefore a newly recognized tribe must prove factual issues anew when it determines it seeks a determination of its treaty status so that all interested tribes have a chance to participate so that is the court the state's reading of the word anew turning to the sentence that perceives there's two phrases that I'd like to bring the to the court's attention first there's a phrase that has not been briefed or addressed in the briefing attempting to intervene in U.S. v. Washington or other treaty rights litigation the Snoqualmie and their reply brief focus on the phrase other treaty rights but that takes that those three words out of context and I think it's important to look at the entirety of that phrase it indicates that the court in Washington for was thinking about two possible scenarios where a newly recognized tribe might adjudicate treaty status one in U.S. v. Washington which these tribes have already done or in a separate proceeding but one that would be similar to U.S. v. Washington where a tribe would intervene so presumably the United States would be a lead plaintiff they're acting as a trustee on behalf of tribes not in a case like this that's being brought against the state it could be U.S. v. Washington U.S. v. Oregon or another proceeding that has not been initiated to the state the other phrase that I want to bring to the court's attention is the final part of that first sentence to present a claim of treaty rights not yet adjudicated and the Snoqualmie and the Samish talk about well they haven't litigated their hunting treaty rights but it's clear in U.S. v. Washington if you look at the first paragraph of the opinion that they were using that phrase claim to treaty rights or claim of treaty rights to refer to treaty status not to rights that might exist under a treaty you're talking about Washington v. Oregon's reference to treaty rights yes that's correct there's many Washingtons here I apologize I meant to say Washington v. Oregon yes so Washington v. Oregon's reference to to present a claim of treaty rights not yet adjudicated it's raised a claim of treaty rights which the Samish and the Snoqualmie argue mean that they can re-litigate their treaty status in the context of hunting rights that's not what the Washington IV court intended and you can tell that by looking at the entire opinion if you look at the first paragraph of the opinion they use that same phrase claim to treaty rights and there it's talking about the factual determinations that were made in Washington II regarding treaty status it's not seeking to subdivide hunting rights from fishing rights Judge Pios asked a question about whether there are other tribal groups that that language would apply to and the answer is yes for example the Jamestown Skullallam were recognized and sought their treaty status in 1981 after this 1975 adjudication and they were successful in both they then proceeded to litigate their UNA usual and accustomed fishing places through the adjudication so that's a backward looking example a forward looking example that it might apply to is a distinct tribal group called the Snoqualmie tribe this group of this Indian group traces its lineage back to Pat Panam similar to the Snoqualmie it is not currently federally recognized but it could seek federal recognition and the Snoqualmie have not yet had an opportunity to litigate their treaty status and they could seek to intervene in the United U.S.V. Washington so that is an example of a tribe that this language could apply to there's numerous other tribal entities that in the state of Washington some of which are seeking federal recognition and some that have not but could in the future the Snoqualmie and the Samish however have had numerous opportunities to advance their claims to successorship successorship under the Treaty of Point Elliot and the principles of preclusion should be applied to this newest effort to litigate treaty status just briefly I'd like to touch on the interests of finality that were important in Washington IV and are also important here it's the my reading of Washington IV is that the court looked at more than anything else the overarching interest in finality and they pointed to the Supreme Court guidance and this circuit's emphasis that there are vital interests in finality that go beyond a single adjudication here you can see why it would be illogical and inconsistent with Washington II to separate fishing rights from hunting rights and to that would flow from that the Mi'kai tribes have filed briefs including the Tulalips who have noted that they believe that the state would indeed be subject to inconsistent decisions if the court were to allow this case to proceed and not rule on issue preclusion and there would be subsequent litigation with the state by the Tulalips and separately with the Snoqualmie potentially there's also the key interests of protecting adversaries from multiple litigation and conserving judicial resources ultimately this court in Washington IV revisited its decision in Washington III and made a determination that the interest of finality weighed strongly against dismissal and not reopening this long litigation so the court the state asked the court to affirm the district court's decision based on issue preclusion if there's no other question. I have some questions and that is the posture of the case here on SINICAM and going to issue preclusion because is it fair to say that the jurisdictional issue is so complicated we shouldn't wade into it or the district court shouldn't have weighed into it given the number of tribal cases that we've had over the many many years so let me start with standing before we you know as one of the threshold issues it seems to me that that the tribes would have standing because they've alleged that they're basically closed out of what's going on as a right of rights that they have all of which of course ultimately will go to the merits but why doesn't it at least give them standing to kick the suit off? Your honor the state's view is that the pleading is deficient as to articulating a concrete and particularized injury to hunting rights or gathering rights. We are not saying that the tribes could not have standing if they had formulated it differently but there are two alleged injuries arise one is a statement in a letter essentially saying conveying the state's view that the tribes don't have these these rights and the second is not inviting for the tribes to give input on some guidance that's considered to be redrafted so neither of those cause an injury to hunting rights there's no nothing concrete here they're simply a statement in a letter and also a call for people to give input to the state as it works on some draft guidance that it'll use in future actions and I don't have any rights according to the state doesn't that give them standing to say we do have some rights I mean you may not agree that they do but doesn't that at least get you past that threshold? Well your honor our view is that it's not sufficient because there is there's no concrete injury. Okay so then let's move to jurisdiction and I appreciate hearing the state's view on jurisdiction. Well so jurisdiction I'd like to ask a clarifying question are you asking beyond standing and about sovereign immunity? Yes the whole area of sovereign immunity of the state versus individuals etc and wouldn't they potentially end up with someone as a legitimate defendant? So your honor this they're obviously the area of sovereign immunity is complex we have tribal sovereign immunity and we have this 11th amendment sovereign immunity so first on sovereign the 11th amendment sovereign immunity again our view is that the pleading the complaint is spatially deficient they have not pled a viable ex parte young theory against any of the defendants obviously not the state of Washington because it doesn't apply not against the governor because the governor has no role in this and not against the director because all that they have alleged is again this letter and not seeking input that's not the type of injury that can give rise to a waiver of 11th amendment sovereign immunity under ex parte young conceivably if the case was remanded and Snoqualmie had an opportunity to amend their complaint they might add further allegations that would at least at a motion to dismiss stage be sufficient to survive as being as a pleading a waiver of sovereign immunity and then parties would have to go to the factual stage to dispute those facts potentially we're talking about not we're not talking about tribal sovereign immunity here we're talking about just talking about 11th sovereign 11th amendment sovereign immunity yes yes that's correct uh so turning to the um tribal sovereign immunity that looms very large in this case uh the Snoqualmie's argued that because the Tulalip's motion to intervene and tribal sovereign immunity was not reached that the court shouldn't reach that uh i believe that the court actually has sufficient information in the record to rule on tribal sovereign immunity and rule 19 and based on the articulation in Washington for it seems clear to me that the Tulalip there is a clear indication that this court's view is that the Tulalips would have a basis for inter uh for a rule 19 uh uh dismissal for a failure to join a party that's claiming tribal sovereign immunity that's not that would be jurisdictional though under rule 82 i mean that would just i agree okay yes i agree those are not just the um tribal sovereign immunity is not jurisdictional i think that you might be able to argue that it's quasi-jurisdictional in some contexts um but i agree all right and finally as to res judicata i just want to note that um there is res judicata can also be viewed as being quasi-jurisdictional it's clearly a threshold issue here and we believe that the court the district court appropriately used its discretion to go to the core issue in the case which is issue preclusion rather than going through the additional procedural steps of potentially having an amendment of a complaint and then potentially moving forward to different motions practice this is the most efficient way of proceeding and i think it uh it would be the best use of judicial resources to address issue preclusion now is it is it your view that even if the tribes were to overcome the 11th amendment and standing that the issue preclusion would be front and center yes determination yes yes if there are no further questions i can simply conclude by asking this court to affirm the district court's decision to dismiss based on issue preclusion thank you thank you back to mr dorsey yes i have one minute first i want to address uh miss anna's complaint our contention that there are other tribes that have been subject to this um if you look at page 800 of washington 4 it talks about new entrants newly recognized tribes that have never litigated any treaty rights and it says all the finality concerns of washington 2 and washington 4 don't apply so a new tribe say this is no quamu tribe if they were newly recognized and they apply for treaty rights they can litigate treaty fishing rights as did james down scala they were recognized after washington 2 but they intervened and they litigated treaty fishing rights in addition to they can litigate other rights the other thing i just mentioned is in usv washington the complaint says it is only for off reservation treaty fishing rights hunting and fishing rights were not mentioned thank you thank you mr smith uh thank you your honor very very briefly in my minute um the state's standing argument is is absurd there clearly was an injury in fact here as director suess wind of the washington department of fish and wildlife said in a letter that he disclaimed stoke palmy's treaty status he said they did not have treaty hunting and gathering rights that that creates an injury in fact that is directly traceable to that state conduct and state sovereign immunity would not at the very least uh protect the claims against director suess wind um under ex parte young right as this is a case against a state official on their official capacity seeking prospective relief in fact there was a case out of the the district court uh involving uh mr suess wind's predecessor director goldmark case brought by the skokomish indian tribe where the district court found in a similar circumstance where director goldmark had said look um skokomish doesn't have treaty hunting rights that as to sovereign immunity um director goldmark was not protected by the 11th amendment so the same would hold against the governor uh the governor is the executive of the state your honor um and we believe he has some authority over what decisions director would make thank you your honors i see that i'm out of time i um we ask that the court reverse and remand thank you the case just argued of snow palmy the samish versus the state of washington is submitted i thank council for your arguments and for the briefing um on this case that has a lot of history so we appreciate your arguments today
judges: McKeown, Paez, Orrick